UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ELBERT JAMES, Individually and For Others Similarly Situated,<br><br>v.<br><br>ENVIRONMENTAL RESOURCES MANAGEMENT SOUTHWEST, INC. | Case No. 4:20-cv-00669<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Elbert James (James) brings this lawsuit to recover unpaid overtime wages and other damages from Environmental Resources Management Southwest, Inc. (ERM) under the Fair Labor Standards Act (FLSA). 29 U.S.C. § 201 *et seq.*

2. James worked for ERM as a Right of Way (ROW) Agent.[1]

3. James and the Putative Class Members (defined below) regularly worked more than 40 hours a week.

4. But ERM did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, ERM pays its ROW Agents a flat amount for each day worked (a "day rate") without overtime compensation.

6. ERM never paid James or the Putative Class Members a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

---

[1] In the industry, Right of Way Agents are also referred to as "Landmen."

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because ERM maintains its headquarters in this District and Division.

10. Indeed, ERM maintains its headquarters in Houston, Texas.

11. Likewise, James worked for ERM in this District and Division.

12. Specifically, James worked for ERM in and around Houston, Texas. Indeed, James regularly worked overtime for ERM in and around Houston, Texas. Despite regularly working over 40 hours, ERM paid James a day rate with no overtime for the work he did for ERM in and around Houston, Texas.

## PARTIES

13. James worked for ERM as a Right of Way (ROW) Agent from approximately November 2015 until January 2018.

14. Throughout his employment with ERM, James was paid a day rate with no overtime compensation.

15. Throughout his employment, ERM paid James a flat daily rate for each day worked regardless of the total hours worked in a work week ("day rate pay plan").

16. James's consent to be a party plaintiff is attached as Exhibit 1.

17. James brings a FLSA collective action on behalf of himself and all other ERM's Day Rate ROW Agents who were paid according to ERM's day rate pay plan.

18. ERM paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

19. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All ROW Agents/Landmen ERM paid according to its day rate pay plan at any time in the last 3 years (the "Day Rate ROW Agents").**

20. The Day Rate ROW Agents can be readily ascertained from ERM's records.

21. ERM may be served with process by serving its registered agent: **Cogency Global, Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201.**

### FLSA COVERAGE

22. At all relevant times, ERM has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, ERM has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, ERM has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

25. At all relevant times, ERM has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

26. In each of the past 3 years, ERM's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

27. At all relevant times, James and the Day Rate ROW Agents were engaged in commerce or in the production of goods for commerce.

28. ERM uniformly applied its policy of paying its Inspectors, including James, a day rate with no overtime compensation.

29. ERM applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

30. By paying its ROW Agents a day rate with no overtime compensation, ERM violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

31. As a result of ERM's day rate pay plan, James and the Day Rate ROW Agents do not receive overtime as required by the FLSA.

32. ERM's day rate pay plan is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

33. ERM bills itself as "a leading global provider of environmental, health, safety, risk, social consulting services and sustainability related services."[2]

34. To complete its business objectives, ERM hires personnel, such as James, to perform landmen services for certain oil and gas companies.

35. Many of these individuals worked for ERM on a day rate basis (without overtime pay).

36. These workers make up the proposed collective of Day Rate ROW Agents.

37. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

38. For example, James worked for ERM as a ROW Agent from approximately November 2015 until January 2018 in Texas and Louisiana.

39. Throughout his employment with ERM, ERM paid him on a day rate basis.

40. James and the Day Rate ROW Agents work for ERM under its day rate pay scheme.

41. James and the Day Rate ROW Agents do not receive a salary in accordance with the FLSA.

42. If James and the Day Rate ROW Agents did not work, they did not get paid.

---

[2] https://www.erm.com/about/ (last visited February 25, 2020).

43. James and the Day Rate ROW Agents do not receive overtime pay.

44. This is despite the fact James and the Day Rate ROW Agents often work more than 10 hours a day, for up to 7 days a week, for weeks at a time.

45. Although he typically worked up to 7 days a week, for more than 10 hours a day, James did not receive any overtime pay.

46. James and the Day Rate ROW Agents received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

47. James's work schedule is typical of the Day Rate ROW Agents.

48. ERM knows James and the Day Rate ROW Agents work for more than 10 hours a day, for up to 7 days a week.

49. ERM's records reflect the fact that James and the Day Rate ROW Agents regularly work far in excess of 40 hours in certain workweeks.

50. ERM does not pay James or the Day Rate ROW Agents overtime for hours worked in excess of 40 in any of those weeks.

51. Instead, ERM pays James and the Day Rate ROW Agents on a day rate basis.

52. James and the Day Rate ROW Agents are not employed on a salary basis.

53. James and the Day Rate ROW Agents do not, and have never, received guaranteed weekly compensation from ERM irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

54. ERM's policy of paying James and the Day Rate ROW Agents a day rate with no overtime compensation violates the FLSA because it deprives James and the Day Rate ROW Agents of overtime for the hours they work in excess of 40 hours in a single workweek.

55. ERM knew James and the Day Rate ROW Agents worked more than 40 hours in a week.

56. ERM and/or its clients control James and the Day Rate ROW Agents' work.

57. ERM requires James and the Day Rate ROW Agents to follow ERM and/or its clients' policies and procedures.

58. James and the Day Rate ROW Agents' work must adhere to the quality standards put in place by ERM and/or its clients.

59. James and the Day Rate ROW Agents are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

60. As ROW Agent, James was responsible for contacting land and mineral rights owners, setting up appointments with these owners, visiting land to facilitate contracts and lease agreements, and submitting paperwork to ERM and/or its clients documenting the same.

61. As a result, Day Rate ROW Agents do not exercise independent judgment or discretion as to matters of significance.

62. James's working relationship with ERM is similar to ERM's relationship with its other Day Rate ROW Agents.

63. Day Rate ROW Agents do not manage general business operations of ERM or its clients.

64. ERM knew, or showed reckless disregard for whether, the Day Rate ROW Agents were entitled to overtime under the FLSA.

65. Nonetheless, ERM failed to pay James and the Day Rate ROW Agents overtime.

66. ERM willfully violated the FLSA.

## CAUSE OF ACTION
## FLSA VIOLATION

67. ERM's day rate pay plan violates the FLSA because James and the other Day Rate ROW Agents did not receive overtime pay for hours they worked in excess of 40 in a week.

68. ERM knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

69. ERM's failure to pay overtime compensation to the Day Rate ROW Agents was not based on any reasonable interpretation of the law.

70. Nor was ERM's decision not to pay its Day Rate ROW Agents overtime made in good faith.

71. Accordingly, James and the Day Rate ROW Agents are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

## COLLECTIVE ACTION ALLEGATIONS

72. James brings this claim as a collective action under the FLSA.

73. The Day Rate ROW Agents were victimized by ERM's day rate pay plan which is in willful violation of the FLSA.

74. Other Day Rate ROW Agents worked with James and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

75. Based on his experiences with ERM, James is aware that ERM's illegal practices were imposed on the Day Rate ROW Agents.

76. The Day Rate ROW Agents are similarly situated in all relevant respects.

77. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

78. The illegal day rate pay plan ERM imposed on James was imposed on all Day Rate ROW Agents.

79. Like James, the other Day Rate ROW Agents are denied overtime when they work more than 40 hours per week.

80. The overtime owed to James and the Day Rate ROW Agents will be calculated using the same records and the same formula.

81. James's experiences are therefore typical of the experiences of the Day Rate ROW Agents.

82. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

83. James has no interest contrary to, or in conflict with, the Day Rate ROW Agents that would prevent collective treatment.

84. Like all Day Rate ROW Agents, James has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

85. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

86. Absent a collective action, many Day Rate ROW Agents will not obtain redress of their injuries, and ERM will reap the unjust benefits of violating the FLSA.

87. Further, even if some of the Day Rate ROW Agents could afford individual litigation against ERM, it would be unduly burdensome to the judicial system.

88. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate ROW Agents, as well as provide judicial consistency.

89. The questions of law and fact that are common to each Day Rate Inspector predominate over any questions affecting solely the individual members.

90. Among the common questions of law and fact are:

   a. Whether ERM's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

   b. Whether ERM's violation of the FLSA was willful; and

   c. Whether ERM's illegal pay practice applied to the Day Rate ROW Agents.

91. James and the Day Rate ROW Agents sustained damages arising out of ERM's illegal and uniform employment policy.

92. James knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

93. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to ERM's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

94. Consistent with ERM's illegal day rate policy, James and the Day Rate ROW Agents were not paid overtime when they worked more than 40 hours in a workweek.

95. As part of their regular business practices, ERM intentionally, willfully, and repeatedly applied its day rate pay plan to James and the Day Rate ROW Agents.

96. ERM's illegal day rate pay plan deprived James and the Day Rate ROW Agents of the premium overtime wages they are owed under federal law.

97. ERM is aware, or should have been aware, that the FLSA required it to pay James and the Day Rate ROW Agents overtime premiums for hours worked in excess of 40 in a workweek.

98. There are many similarly situated Day Rate ROW Agents who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

99. The other Day Rate ROW Agents are known to ERM, are readily identifiable, and can be located through ERM's records.

**JURY DEMAND**

James demands a trial by jury.

**RELIEF SOUGHT**

Wherefore, James prays for:

 (a) an order allowing James's FLSA claims to proceed as a collective action and directing notice to the other Day Rate ROW Agents pursuant to § 216(b) of the FLSA;

(b) judgment finding ERM in violation of the FLSA;

(c) judgment finding ERM liable to James and the Day Rate ROW Agents for unpaid overtime, and an equal amount of liquidated damages;

(d) judgment awarding James and the Day Rate ROW Agents reasonable attorneys' fees and costs of this action;

(e) judgment awarding James and the Day Rate ROW Agents pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**Taylor A. Jones**
Texas Bar No. 24107823
Federal ID No. 3348814
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**